MICHIGAN FRUIT CANNERS, INC. v DEPARTMENT OF
TREASURY

1. TAXATION—INTERSTATE COMMERCE—CONSTITUTIONAL LAW—CORPO-
RATIONS.

A state may not tax interstate or foreign commerce and may not
impose upon a foreign corporation a tax for the privilege of
engaging in interstate commerce (US Const, art I, § 8).

2. TAXATION—CORPORATIONS—INTERSTATE COMMERCE—INTRASTATE
COMMERCE.

The fact that a corporation is engaged in interstate commerce in
the state does not of itself invalidate an excise or franchise tax
upon the privilege of carrying on an intrastate business.

3. TAXATION—INTERSTATE COMMERCE—CONSTITUTIONAL LAW—MULTI-
PLE TAXATION.

A prime consideration in ascertaining whether or not a state tax
unconstitutionally burdens or interferes with interstate com-
merce is the incidence of multiple taxation; that is, whether the
taxing statute as applied to receipts from interstate sales
includes in its measure, without apportionment, receipts de-
rived from activities in interstate commerce and whether the
exaction is of such a character that if lawful it may in sub-
stance be laid to the fullest extent by states in which the goods
are sold as well as those in which they are manufactured.

4. TAXATION—INTERSTATE COMMERCE—CONSTITUTIONAL LAW—MULTI-
PLE TAXATION—RISK.

A corporate taxpayer who processes a product in Michigan and
sells it in another state is under the risk of multiple taxation
where both states have statutes providing for taxation based
upon the sales of the product; it is not necessary that the
taxpayer actually pay taxes to the state of sale, it is enough
that there be a real risk of such a tax being assessed for such

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 51 Am Jur, Taxation § 844 et seq.
State excise, privilege, or franchises tax upon foreign corporations
as affected by commerce clause, 139 ALR 951.

taxation of out-of-state sales by Michigan to be unconstitutional.

5. TAXATION—CORPORATIONS—FRANCHISE FEES—STATUTES—INTERPRETATION OF STATUTES.

The words "subject to" and "taxable" as used in the statute providing for franchise taxes based in part upon out-of-state sales of a foreign corporation qualified to do business in Michigan mean that if all or a portion of the corporation's out-of-state activities are within the jurisdiction of another state's power to tax, those activities are exempt from coverage by the Michigan franchise fee tax (MCLA 450.305).

Appeal from Corporation Tax Appeal Board. Submitted Division 2 February 13, 1974, at Lansing. (Docket No. 16198.) Decided April 30, 1974.

The Michigan Department of Treasury determined franchise fees of Michigan Fruit Canners, Incorporated, a foreign corporation. The Corporation Tax Appeal Board affirmed. The corporation appeals by leave granted. Reversed and remanded.

*Butzbaugh, Page, Butzbaugh & Dewane,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch* and *Charles E. Liken,* Assistants Attorney General, for defendant.

Before: J. H. GILLIS, P. J., and HOLBROOK and DENEWETH,* JJ.

HOLBROOK, J. On June 12, 1970, the Director of the Corporation Franchise Fee Division of the Michigan Department of Treasury issued a determination that franchise taxes of $27,692.56 plus interest were owed by the plaintiff pursuant to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

MCLA 450.304; MSA 21.205, and MCLA 450.305; MSA 21.208, for the tax years 1966, 1967, 1968 and 1969. On September 9, 1971, the Department of Treasury reaffirmed its initial determination of tax delinquency. The Corporation Tax Appeal Board, in turn, affirmed the Department's decision on January 2, 1973. We granted leave to appeal thereafter.

Plaintiff is a Delaware Corporation with its principal place of business in Benton Harbor, Michigan. Plaintiff is in the business of processing fruits and vegetables and had plants in Michigan, Wisconsin, and Texas, during all four alleged tax delinquency years. In 1966 and 1967 plaintiff also had plants in Illinois and Iowa. Plaintiff was qualified to do business in Michigan, Wisconsin, Texas, Illinois, Iowa, and Delaware. Although not qualified to do business in either state, plaintiff paid franchise taxes in both North Carolina and California. After June of 1972 nine additional states either notified plaintiff that franchise taxes were due to such states or requested information with regard to plaintiff's business operations in those states. These claims and inquiries include the years involved in this case and are being processed at the present time.

Plaintiff markets its products through independent brokers in most of the continental United States. Plaintiff maintains warehouses adjacent to its plants and in 25 other states. In these warehouses the title to plaintiff's products remains in its own name until sold to in-state customers.

The issue involved in this case is the proper construction to be given to certain portions of MCLA 450.305; MSA 21.208, reading:

"Sec. 5. In the case of computing the annual franchise fee prescribed by section 4, both as to domestic

and foreign corporations, such computations shall be made by the Michigan corporation and securities commission, working in conjunction with the state department of revenue, upon the entire paid-up capital and surplus of any corporation *which is not taxable in another state.* A corporation is *taxable* in another state if in that state he *[sic]* is *subject* to a franchise tax measured by net income, a franchise tax for the privilege of doing business, or a corporate stock tax. * * *

"(3) The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period.

"(a) Sales of tangible personal property are in this state if:

"(1) The property is delivered or shipped to a purchaser, other than the United States government, within this state regardless of the f.o.b. point or other conditions of the sale; or

"(2) The property is shipped from an office, store, warehouse, factory, or other place of storage in this state and (1) the purchaser is the United States government or (2) *the taxpayer is not taxable in the state of the purchaser."* (Emphasis supplied.)

The defendant Department of Treasury claims that the key words "subject to" found in § 5 mean that plaintiff's out-of-state sales are not taxable in the state of the purchaser unless the plaintiff is actually taxed, *i.e.,* actually "subject to" a tax, by one of the three mentioned taxes in the state of the purchases.

On the other hand, plaintiff claims that the word "taxable" should be emphasized. "Taxable" means capable of being taxed. If plaintiff's out-of-state sales are within the jurisdiction, *i.e.,* "subject to" the jurisdiction, of another state's power to tax, they are exempt from coverage under the Michigan franchise tax.

Whatever interpretation we give to the statute, and whatever result we reach thereby, must be consistent with the commerce clause. US Const, art I, § 8. It is well settled that a state may not tax interstate or foreign commerce and that a state may not impose upon a foreign corporation a tax for the privilege of engaging in such commerce. See, *e.g., Gloucester Ferry Co v Pennsylvania,* 114 US 196; 5 S Ct 826; 29 L Ed 158 (1885); *Coit & Co v Sutton,* 102 Mich 324; 60 NW 690 (1894). However, the fact that a corporation is also engaged in *inter*state commerce in the state does not of itself invalidate an excise or franchise tax upon the privilege of carrying on an *intra*state business. *Southern Natural Gas Corp v Alabama,* 301 US 148; 57 S Ct 696; 81 L Ed 970 (1937). The name or label given to the tax is not controlling if it is constitutionally defective. *Spector Motor Service, Inc v O'Connor,* 340 US 602; 71 S Ct 508; 95 L Ed 573 (1951).

A prime consideration in ascertaining whether or not a state tax unconstitutionally burdens or interferes with interstate commerce is the incidence of multiple taxation.[1] See *Joseph v Carter & Weekes Stevedoring Co,* 330 US 422; 67 S Ct 815; 91 L Ed 993 (1947); *Michigan-Wisconsin Pipe Line Co v Calvert,* 347 US 157; 74 S Ct 396; 98 L Ed 583 (1954), *reh den* 347 US 931; 74 S Ct 528; 98 L Ed 1083; *Northwestern States Portland Cement Co v Minnesota,* 358 US 450; 79 S Ct 357; 3 L Ed 2d 421 (1959). In *J D Adams Mfg Co v Storen,* 304 US 307, 311; 58 S Ct 913, 916; 82 L Ed 1365, 1369 (1938), the rule for "multiple taxation" was stated thus:

---

[1] Another significant consideration is whether or not the tax is properly apportioned over *intra*state as opposed to *inter*state business activities. Apportionment is a concomitant to the prohibition against multiple taxation. For a discussion of apportionment, see 67 ALR2d 1292.

"The vice of the statute as applied to receipts from interstate sales is that the tax includes in its measure, without apportionment, receipts derived from activities in interstate commerce; and that the exaction is of such a character that if lawful it may in substance be laid to the fullest extent by states in which the goods are sold as well as those in which they are manufactured. Interstate commerce would thus be subjected to the *risk of a double tax burden* to which intrastate commerce is not exposed, and which the commerce clause forbids." (Emphasis supplied.)

See, also, *Gwin, White & Prince, Inc v Henneford,* 305 US 434; 59 S Ct 325; 83 L Ed 272 (1939). Justice Black criticized the "risk" rule in his dissent in *JD Adams Mfg Co,* 304 US 307, 328; 58 S Ct 913, 923; 82 L Ed 1365, 1378, saying:

"Yet, it would seem that only Congress has the power to formulate rules, regulations and laws to protect interstate commerce from *merely possible future unfair burdens.*" (Emphasis in text.)

However, the "risk" rule of multiple taxation has remained relatively unassailed since *JD Adams Mfg Co.* In *General Motors Corp v Washington,* 377 US 436; 84 S Ct 1564; 12 L Ed 2d 430 (1964), the Supreme Court intimated, in a 5-to-4 decision, that a taxpayer would need to show that he was *actually* bearing the burden of multistate taxation in order to successfully attack a state's taxing statute under the commerce clause. Justice Goldberg, in his dissent, severely criticized this "new" idea. Whatever the merits of the "actual" rule versus the "risk" rule, it has not been followed. Most recently, in *Evco v Jones,* 409 US 91; 93 S Ct 349; 34 L Ed 2d 325 (1972), the Supreme Court, in a unanimous per curiam opinion, struck down the levy of New Mexico's gross receipts tax on certain out-of-state sales of a domestic corpora-

tion and in doing so the Court quoted the exact statement we quoted from *J D Adams Mfg Co, supra.*

Thus, the "risk" rule for multiple taxation remains "the" rule. Our interpretation of MCLA 450.305; MSA 21.208, and hence its application, must be consistent with the "risk" rule in order to stand constitutional muster. In short, the taxing statute must not be applied in such a way as to place plaintiff under the risk of multiple taxation. Therefore, we are obligated to interpret the words "subject to" and "taxable" at issue in MCLA 450.305; MSA 21.208 to mean as plaintiff claims, *i.e.,* if all of, or a portion of, a plaintiff's out-of-state activities are within the jurisdiction of another state's power to tax, the activities are exempt from coverage by the Michigan franchise fee tax.[2] While we recognize that Michigan's franchise tax would administratively be much easier to assess if only those portions of a corporation's out-of-state activities actually taxed by another state were exempt from apportionment within the taxation formula of MCLA 450.305; MSA 21.208, administrative convenience must bow to constitutional mandate where applicable.

The risk of multiple taxation must be more than merely alleged, however. The taxpayer must show that the statutory formula of apportionment places a burden upon interstate commerce in a constitutional sense. *Northwestern States Portland Cement Co, supra.* Plaintiff's statement of facts, agreed to by the defendant, shows that the risk of

---

[2] We are not unmindful of two cases cited by the defendant from other jurisdictions that hold otherwise. *American Mfg Co v Commonwealth,* 251 Mass 329; 146 NE 801 (1925); *Hern v Carpenter,* 312 SW2d 823 (Mo, 1958). However, neither case is factually or legally so close to this case as to affect our analysis of what is required by the commerce clause.

multiple taxation is very real because of the recent tax assessments and tax investigations made by other states. Since the defendant, and more specifically the Corporation Tax Appeal Board, did not evaluate the tax liability of the plaintiff under MCLA 450.305; MSA 21.208, consistent with the risk rule of multiple taxation, this case must be remanded for reconsideration of the tax assessment made against the plaintiff.

Reversed and remanded for proceedings consistent with this opinion. No costs, a public question being involved.

All concurred.