MASTER CRAFT ENGINEERING, INC v DEPARTMENT OF
TREASURY

Docket No. 75806. Submitted July 18, 1984, at Lansing.—Decided
February 20, 1985.

The Department of Treasury assessed a use tax against Master
Craft Engineering, Inc., on two airplanes which Master Craft
had purchased in other states. No sales tax or use tax was paid
to the other states. The first aircraft was based in Michigan
until it crashed. The second aircraft was brought to Michigan
where it was fitted with equipment salvaged from the first
aircraft and then transferred to Georgia where it was thereaf-
ter based. Master Craft filed a petition for redetermination
with the State Board of Tax Appeals and, because the board's
continuing authority to decide cases was questionable at that
time, also filed an appeal with the Tax Tribunal. The tribunal
dismissed the appeal and informed the petitioner that if the
board did not reach a decision by December 31, 1981, the
matter would be transferred to the tribunal. The board heard
the matter but failed to issue a decision and, in November
1982, the matter was transferred to the tribunal. The tribunal
ultimately issued a final order upholding the assessment. Peti-
tioner appealed, alleging several grounds for reversal. Held:

1. Petitioner alleged that the tribunal's decision was void
because the tribunal was not empowered to assert jurisdiction
over the matter and that the tribunal's initial dismissal was
therefore conclusive. However, the intent of the Legislature in
creating the Tax Tribunal was that an appeal, such as this,
which had been heard by the State Board of Tax Appeals but

REFERENCES FOR POINTS IN HEADNOTES

[1] 72 Am Jur 2d, State and Local Taxation § 787.
[2] 2 Am Jur 2d, Administrative Law § 321.
    71 Am Jur 2d, State and Local Taxation § 876.
[3] 68 Am Jur 2d, Sales and Use Taxes § 171 et seq.
[4] 2 Am Jur 2d, Administrative Law §§ 688-690.
    68 Am Jur 2d, Sales and Use Taxes § 240.
[5] 68 Am Jur 2d, Sales and Use Taxes §§ 189-191, 219.
[6] 5 Am Jur 2d, Appeal and Error § 791.
[7] 2 Am Jur 2d, Administrative Law §§ 455-458.
[8] 72 Am Jur 2d, State and Local Taxation § 858.

not yet decided should come within the jurisdiction of the tribunal when the board ceased to exist.

2. Although there was a delay of approximately three years between the hearing date and the decision, the petitioner has not presented a sufficient showing of prejudice to invoke the doctrine of laches to preclude the treasury department from pursuing this matter.

3. Petitioner has not shown that it was entitled to a *de novo* proceeding before the tribunal.

4. Petitioner admitted that the first aircraft was subject to the use tax if the Tax Tribunal's jurisdiciton was proper. Petitioner argued that the second aircraft was not subject to the use tax because it is an instrument of interstate commerce which did not come to rest in Michigan for purposes of the tax. While the activity in Michigan regarding the aircraft was closely connected with interstate commerce, it was distinct from it. Bringing the aircraft to Michigan, where it remained for some months while being equipped before being used in interstate transportation, was a "taxable moment" for state tax purposes.

5. The Department of Treasury properly conducted only one audit to determine petitioner's tax liability for the years in question.

6. Petitioner's mere assertion of a denial of due process is without sufficient support to warrant reversal on that ground.

7. The tribunal's decision was sufficient to meet the statutory requirements for statements of facts and conclusions of law.

8. The tribunal erred in holding that it could not decide the issue of interest without a recommendation of the hearing officer. Furthermore, because the delay in rendering the decision was not attributable to the petitioner, interest on the assessment should not have accrued during the period of delay.

Affirmed in part; reversed in part.

1. TAXATION — TAX TRIBUNAL — STATE BOARD OF TAX APPEALS — JURISDICTION.

The Tax Tribunal properly assumed jurisdiction over a case which had been heard by the former State Board of Tax Appeals but which had not been decided by the board prior to the date upon which the board ceased to exist (1980 PA 162; 1981 PA 138).

2. TAXATION — TAX TRIBUNAL — DELAY — LACHES.

A taxpayer wishing to invoke the doctrine of laches to invalidate a decision of the Tax Tribunal because of a lengthy delay

between the hearing on the taxpayer's petition and the ultimate decision of the tribunal is required to present a showing of actual prejudice.

3. TAXATION — USE TAX — SALES TAX.

The use tax is a complement to the sales tax and is designed to cover those transactions not covered by the sales tax act (MCL 205.91 *et seq.;* MSA 7.555[1] *et seq.).*

4. TAXATION — APPEAL — CONSTITUTIONAL LAW.

Review of a decision of the Tax Tribunal is limited to whether the decision was authorized by law and was supported by material, competent, and substantial evidence on the whole record (Const 1963, art 6, § 28).

5. TAXATION — USE TAX — INTERSTATE COMMERCE — TAXABLE MOMENT.

An item may be subject to the use tax where it is brought into the state, stored, and then used in interstate commerce; such activity is closely connected to but distinct from interstate commerce and, for state tax purposes, a "taxable moment" occurs because the item has "come to rest" in the state (MCL 205.93; MSA 7.555[3]).

6. PLEADING — APPEAL — DUE PROCESS.

A mere assertion of a denial of due process, without more, is insufficient to merit reversal on that ground.

7. TAXATION — TAX TRIBUNAL.

A decision of the Tax Tribunal must be in writing or stated in the record and must include a factual statement and conclusions of law; this requirement may be met where, even though the tribunal's actual opinion, standing alone, would be insufficient, the final order incorporates both the opinion and a comprehensive proposed judgment which addresses the issues in question (MCL 205.751; MSA 7.650[51]).

8. TAXATION — TAX TRIBUNAL — INTEREST.

The question of whether a taxpayer should be assessed interest on an amount of tax found by the Tax Tribunal to be payable may be answered by the tribunal without recourse to a recommendation of the hearing examiner.

*Rubenstein, Isaacs, Lax & Bordman* (by *Robert D. Kaplow* and *Robert A. Kuhr),* for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, and *Richard R. Roesch* and *Thomas J. Kenny,* Assistants Attorney General, for respondent.

Before: DANHOF, C.J., and D. E. HOLBROOK, JR., and C. W. SIMON, JR.,* JJ.

PER CURIAM. Petitioner, Master Craft Engineering, Inc., appeals as of right from the final order of the Michigan Tax Tribunal, dated December 15, 1983, which affirmed the Department of Treasury's use tax assessment for the period from January 1, 1975, to September 30, 1977, in the total amount of $35,325.20 on two airplanes owned by Master Craft. We affirm.

Master Craft is incorporated in Michigan with its corporate headquarters located in Belleville, Michigan. Master Craft primarily manufactures automobile stampings. Master Craft Industrial (apparently a subsidiary) is incorporated in Delaware, has its main plant in Tifton, Georgia, and manufactures lift trucks. In 1975, Master Craft purchased a Mitsubishi "MU-2" airplane in New Jersey and hangared it at Willow Run Airport in Ypsilanti. In April, 1977, the MU-2 crashed. The radios and other instruments were salvaged. Thereafter, Master Craft purchased a Cessna 412C. This plane was bought in Illinois, registered in Alabama, and, immediately after its purchase, flown to Michigan where petitioner took delivery of it. The plane contained little instrumentation. It was first flown to Detroit, and later to Tri-City Airport in Freeland, Michigan. The plane was taken to Freeland in order to have an experienced mechanic install the salvaged MU-2 equipment in the Cessna. From June 30, 1977, to December, 1977, repairs were made at Tri-City Airport, Wil-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

low Run Airport, and the Cessna dealership located in Illinois. After the repairs were completed —and it is unclear whether the last repairs were made in Illinois—the plane was hangared in Georgia. Master Craft paid no out-of-state sales or use taxes on either of these planes prior to the Michigan assessment.

In 1977, the Department of Treasury's Revenue Division conducted an audit to determine Master Craft's potential tax liability. Although unclear, it appears that this audit included a use tax analysis for the two planes, under MCL 205.91 *et seq.;* MSA 7.555(1) *et seq.* The audit resulted in an order of determination of assessment dated July 26, 1979, in the amount of $28,706.16 plus interest of $6,619.04 for a total of $35,325.20. Master Craft argues that the department conducted an impermissible second audit, while the department counters that the audit was of a continuing nature.

In response to the assessment, Master Craft filed a petition for redetermination on August 24, 1979, with the State Board of Tax Appeals. Master Craft also filed a "protective appeal" with the tribunal, since the board's continuing authority to decide these cases was questionable in light of the creation of the tribunal and the transfers of jurisdiction wrought thereby. See *Queen Airmotive, Inc v Dep't of Treasury,* 105 Mich App 231; 306 NW2d 461 (1981). A hearing was held before the board on July 17, 1980. Master Craft's president, John W. Haswell, testified regarding the company's use of both planes during the tax period.

On February 11, 1981, the tribunal informed Master Craft's counsel that it was dismissing the protective appeal because the parties had submitted the matter to the board. Pursuant to the tribunal's interpretation of 1980 PA 162, the letter also noted that the matter would be transferred to

the tribunal if the board did not reach a decision by December 31, 1981. The board failed to reach a decision by that date, and on November 17, 1982, when a decision was still not forthcoming, the tribunal informed Master Craft that the matter had been transferred to the tribunal. On July 28, 1983, a 14-page proposed judgment affirming the assessment was issued. On August 30, 1983, the tribunal adopted and incorporated by reference the findings of fact and conclusions of law contained in the proposed judgment. After granting Master Craft's motion for rehearing, the tribunal issued a final order dated December 15, 1983, which affirmed the assessment. This appeal ensued.

Master Craft first argues that the tribunal's initial dismissal of the protective appeal was conclusive. It reasons that only the board was empowered to decide the petition for redetermination and that, since the transfer contradicts 1980 PA 162 and 1981 PA 138, the tribunal's decision is void. Master Craft maintains that the transfer was void because the Legislature intended to transfer only those cases to the tribunal which had not been heard, there being no provision for transferring those cases which had been heard but not yet decided. Petitioner also concludes that it was denied an original and independent hearing because the tribunal decided the case based on the transcript from the board hearing and that, since the board failed to make a decision within a reasonable period under MCL 24.285; MSA 3.560(185), it violated its statutory duty to proceed in a timely manner.

1981 PA 138, § 4, provides as follows:

"(1) This amendatory act shall take effect September 16, 1980. All new appeals from an assessment, decision

or order of the department shall be made to the tax tribunal effective September 16, 1980. An appeal to the state board of tax appeals filed prior to September 16, 1980 shall proceed as follows:

"(a) A matter which has not been heard, and submitted to the board for decision, on or before January 1, 1982 shall be transferred to the tax tribunal as of January 1, 1982.

"(b) *A matter which has been heard, and submitted to the board for decision, on or before January 1, 1982 shall be completed and a decision issued before September 30, 1982.*

"(2) An appeal having been filed in any court of record in this state prior to January 1, 1981 shall proceed in those courts until a decision is rendered. Appeals filed after January 1, 1981 shall be in accordance with this amendatory act." (Emphasis added.)[1]

The board "heard" the matter on July 17, 1980, but failed to reach any decision by the date it ceased to exist. Master Craft argues that the tribunal lacked the power to decide this case.

As is obvious from 1981 PA 138, the Legislature did not provide for what should happen in the event that the board had "heard" a case but failed to render a decision by September 30, 1982. This Court is therefore faced with a question of legisla-

---

[1] 1981 PA 138 amended 1980 PA 162, which provided in pertinent part:

"Section 4. This amendatory act shall take effect 90 days after signature by the governor. All new appeals from an assessment, decision or order of the department shall be made to the tax tribunal effective with the effective date of this act. An appeal to the state board of tax appeals filed prior to the effective date of this act shall proceed as follows:

"(a) A matter which has not been heard on or before January 1, 1981, shall be transferred to the tax tribunal as of January 1, 1981.

"(b) A matter which has been heard on or before January 1, 1981 shall be completed by the board and a decision issued before December 31, 1981.

"(c) An appeal having been filed in any court of record in this state prior to January 1, 1981 shall proceed in those courts until a decision is rendered. Appeals filed after January 1, 1981 shall be in accordance with this amendatory act."

tive intent. The tribunal's final order concluded as follows:

"We find that the only reasonable construction, considering the provisions of the Tax Tribunal Act, 1980 PA 162, and 1981 PA 138 together, is that it was intended by the Legislature that all tax appeals as to taxes enumerated in TTA § 79 would come under the jurisdiction of the Michigan Tax Tribunal upon extinction of the State Board of Tax Appeals. Interestingly, petitioner herein has not argued that this cause belongs within the jurisdiction of another existing court or quasi-judicial body, just that it does *not* belong before the tribunal.
"We conclude that the tribunal does possess jurisdiction over this appeal." (Emphasis in original.)

We agree.

Helpful to our analysis in this case is an analysis of HB 4238 (subsequently enacted into 1981 PA 138) prepared by the House Legislative Analysis Section for the Taxation Committee, containing material complete as of June 15, 1981, which states in part:

"The enacting section of the law (Public Act 162 of 1980) also declared that all appeals of actions by the treasury department would have to be made to the tax tribunal with the effective date of the act (September 16, 1980). The act also repealed those sections of the law creating the tax appeals board as of December 31, 1981. Matters not *heard* before January 1, 1981, were to be transferred to the tribunal on that date. Matters heard before January 1, 1981 were to be 'completed' and *decisions* issued before December 31, 1981. Since the passage of the act in 1980, the appeals board has decided 162 cases, and is completing 42 others. However, it will still have around 200 cases pending (after receiving briefs, hearing witnesses, etc.) at the end of 1981, and would therefore not have legal existence to *decide* [emphasis in original] those cases, *which would*

*have to be heard again before the tax tribunal.* (Emphasis added.)

This analysis evinces a clear intent by the Legislature to have appeals which had not been decided, but which had been "heard", come within the jurisdiction of the Tax Tribunal.

Master Craft additionally argues that the tribunal's initial dismissal of this action was a conclusive determination regarding its lack of jurisdiction. However, the tribunal's initial dismissal was correct, because the board retained jurisdiction of the case at that time, *i.e.,* until December 31, 1981, pursuant to 1980 PA 162. The board's inability to clear its docket by the statutorily-mandated deadline will not be allowed to prohibit ultimate disposition of a pending case. The Legislature could not have intended that Master Craft's case simply disappear. Indeed, the above-noted legislative analysis belies this contention. Moreover, the Legislature provided that all new cases be submitted to the tribunal. The fact that the board failed to render a decision does not change the intended result, nor does it make the tribunal's earlier declination of jurisdiction conclusive. A contrary conclusion would deny the right of all parties to have a decision rendered on the merits. Accordingly, we hold that the tribunal properly exercised jurisdiction in this case.

Petitioner next argues that it was prejudiced because of the delay in reaching a decision and that it was entitled to a *de novo* proceeding before the tribunal. Petitioner concludes that the doctrine of laches should be applied to preclude respondent from pursuing this action. We disagree.

An order of assessment and determination was issued on July 26, 1979. Master Craft filed a petition with the board on August 24, 1979. An

answer was filed on September 14, 1979, and a hearing was set for March 13, 1980. Thereafter, by agreement of the parties, the hearing was adjourned for the reason that a settlement appeared imminent. A hearing date was set for May 15, 1980. Subsequently, petitioner moved for adjournment because its president was unable to attend the hearing on the above date. The hearing was then noticed and held on July 17, 1980. Previously, on August 27, 1979, Master Craft had filed its "protective appeal" with the tribunal, with such being dismissed on February 19, 1981. Ultimately, an opinion and judgment were entered on August 30, 1983. After a motion for reconsideration was filed, a final order was entered on December 15, 1983.

Although MCL 205.7; MSA 7.657(7) required both that a hearing be held within 60 days of the filing of an answer and that the board render a decision within 20 days of the hearing, we find no reversible error. First, the delay in setting the hearing was attributable to two adjournments, one upon stipulation of the parties and the other upon request of petitioner. Petitioner may not object to the July 17, 1980, date of hearing. Furthermore, while we do not countenance the delay of approximately three years in rendering a decision (from 20 days after the date of hearing until August 30, 1983), petitioner is required to present a showing of prejudice in order to invoke the doctrine of laches. *Dep't of Treasury v Campbell,* 107 Mich App 561, 570; 309 NW2d 668 (1981), *lv den* 413 Mich 935 (1982).

In this connection, petitioner argues it was prejudiced because "decisions are to be rendered by the officer hearing the case * * * so that he may weigh the presentation of evidence and the demeanor of witnesses against the facts presented".

This is insufficient, especially where, as here, there was only one witness presented at the hearing and the facts were not genuinely in dispute. The issues involved herein were legal, not factual. Accordingly, petitioner has not supported its claim of prejudice.

As a corollary, relying on the same assertion of prejudice, Master Craft argues that it was entitled to a *de novo* proceeding before the tribunal.[2] Again, as noted above, petitioner's assertion of prejudice is unpersuasive. It did not claim that it wished to present new and additional evidence. The parties also entered into a stipulation of facts before the board. We will not reverse the tribunal's decision on this ground.

We next turn to petitioner's substantive argument that, since the Michigan use tax does not apply to instrumentalities of interstate commerce and the Cessna neither came to rest within Michigan nor reached the end of its interstate journey in this state, the state is precluded from imposing a use tax. According to petitioner, that journey was temporarily interrupted so that essential re-

---

[2] While the above-quoted portion of the House analysis of 1981 PA 138 intimates that the tribunal would then be required to start the case anew, no clear intention can be drawn from the House analysis. The analysis continues, stating:

"For:

"People with cases already heard but not decided by the tax appeals board have expended considerable time and money on their appeals. They would have to start all over again before the tax tribunal if the tax appeals board is not allowed to exist until it finishes those cases.

"Against:

"There is no reason to suppose that the tax tribunal's decisions would be any different than those of the tax appeal board. Thus, prolonging the life of the board would probably not make any appreciable difference in the amount of revenue the state would ultimately realize. *Moreover, it is hardly likely that the tax tribunal would force people to begin their appeals hearing all over again; the tribunal is perfectly capable of deciding how to properly consider testimony taken by the appeal board.*" (Emphasis added.)

Thus, we do not find guidance on the basis of legislative intent.

pairs could be made by the only man capable of making them. Further, petitioner argues that the Cessna was neither used nor stored while at Willow Run Airport, so that no taxable moment occurred within Michigan. Finally, petitioner points to the fact that the Cessna was based in Georgia, with no intrastate flights occurring while it was in Michigan, and the fact that the plane was only brought into this state for purposes of repair.

Master Craft admits that the MU-2 was subject to the use tax if jurisdiction was proper. Having decided that the tribunal properly assumed jurisdiction, we turn to the substantive issue concerning the Cessna.

MCL 205.93; MSA 7.555(3) provides as follows:

"There is levied upon and there shall be collected from every person in this state a specific tax for the privilege of using, storing, or consuming tangible personal property in this state, which tax shall be equal to 4% of the price of the property, or services specified in section 3a, and to the tax there shall be added penalties and interest where applicable as provided in this act. For the purpose of the proper administration of this act and to prevent the evasion of the tax, *it shall be presumed that tangible personal property purchased shall be subject to the tax if brought into the state within 90 days of the purchase date and shall be considered as acquired for storage, use, or other consumption in this state.*" (Emphasis supplied.)

MCL 205.92; MSA 7.555(2) provides the following definitions:

"(b) 'Use' means the exercise of any right or power over tangible personal property incident to the ownership of that property including transfer thereof in any transaction where possession is given.

"(c) 'Storage' means any keeping or retention in this state for any purpose after losing its interstate character."

The use tax is a complement to the sales tax and is designed to cover those transactions not covered by the sales tax act. *Kal-Aero, Inc v Dep't of Treasury,* 123 Mich App 46, 53; 333 NW2d 171 (1983). In reviewing a decision of the Tax Tribunal, this Court's review is limited to whether the decision was authorized by law and whether there was material, competent, and substantial evidence on the whole record. Const 1963, art 6, § 28. See *MCI Telecommunications Corp v Dep't of Treasury,* 136 Mich App 28; 355 NW2d 627 (1984).

Here, petitioner attacks imposition of the use tax on the basis of Article 1, § 8, clause 3 of the United States Constitution, which forbids the burdening by taxation of interstate commerce or its instrumentalities.[3] See *Helson v Kentucky,* 279 US 245; 49 S Ct 279; 73 L Ed 683 (1929), *Michigan Wisconsin Pipe Line Co v Michigan,* 58 Mich App 318, 321; 227 NW2d 334 (1975), *lv den* 394 Mich 822 (1975). Thus, Article 1, § 8(3) serves as our point of departure. In recognition of this prohibition concerning interstate commerce, Michigan provides an exemption from the use tax for property which would otherwise be prohibited from taxation under the United States or Michign Constitutions. MCL 205.94(b); MSA 7.555(4)(b). Accordingly, we must ascertain whether there was an "intrastate, taxable event" in Michigan. See *Cover-*

---

[3] We note that in order for a tax to be constitutional, the activity must have a substantial nexus to the taxing state, it must be fairly apportioned, it may not discriminate against interstate commerce, and it must be fairly related to services provided by the state. See *Bob-Lo Co v Dep't of Treasury,* 112 Mich App 231, 240; 315 NW2d 902 (1982), quoting *Complete Auto Transit, Inc v Brady,* 430 US 274; 97 S Ct 1076; 51 L Ed 2d 326 (1977). Here, petitioner does not contend that the tax is not fairly apportioned, that there is insufficient nexus to this state, or that it is not related to services provided by this state. Rather, petitioner asserts that there was no "taxable moment", *i.e.,* that the Cessna never "came to rest" within Michigan so that it never lost its identity as an instrumentality of interstate commerce.

*dale v Arkansas-Louisiana Pipe Line Co,* 303 US 604, 612; 58 S Ct 736; 82 L Ed 1043 (1938).

Here, the determination of whether there was such an intrastate, taxable event depends upon whether the Cessna had "come to rest" in this state prior to becoming an instrumentality of interstate commerce. If so, a "taxable moment" occurred and the state's imposition of the use tax was justified. See generally, *Henneford v Silas Mason Co, Inc,* 300 US 577; 57 S Ct 524; 81 L Ed 814 (1937); *Southern Pacific Co v Gallagher,* 306 US 167; 59 S Ct 389; 83 L Ed 586 (1939).

In *Coverdale v Arkansas-Louisiana Pipe Line, supra,* the United States Supreme Court distinguished the often fine line between interstate commerce and its instrumentalities and operations distinct from such commerce:

"We think *[Helson v Kentucky, supra,* and other cases]* belong to the category of cases which construe the state tax acts involved as taxes on interstate commerce and its instrumentalities rather than on *operations closely connected with but distinct from that commerce.* In the *Interstate* case *[State Tax Commission v Interstate Natural Gas Co,* 284 US 41; 52 S Ct 62; 76 L Ed 156 (1931)], and the *Cooney* case *[Cooney v Mountain States Telephone & Telegraph Co,* 294 US 384; 55 S Ct 477; 79 L Ed 934 (1935)], taxes levied on the business of engaging in interstate commerce were held invalid. Likewise, in the *Helson* case, this Court concluded that the tax on gasoline brought into the state and used on an interstate ferry was analogous to a tax on the use of the ferry itself in transit and therefore within the rule prohibiting state taxes on commerce. A narrow distinction in fact exists between the tax held invalid in the *Helson* case and the valid tax considered in *Nashville, C & St L R Co v Wallace,* 288 US 249; 53 S Ct 345; 77 L Ed 730; 87 ALR 1191 (1933), where a tax on gasoline *brought into the state, stored and then used* to drive engines *in interstate transportation,* was held valid. *The storage and withdrawal was*

*an intrastate, taxable event."* (Emphasis added.) 303 US 611-612; 58 S Ct 740; 82 L Ed 1049-1050.

The above language instructs that taxation may be valid where the taxable item is "brought into the state, stored, and *then* used * * * in interstate transportation". This is an activity "closely connected with but distinct from that commerce". Under such circumstances, a "taxable moment" occurs for state tax purposes because the item has "come to rest" in this state. We find such to be the case with respect to the Cessna.

The record presents competent, material and substantial evidence warranting affirmance of the department's final order of assessment. The Cessna was purchased in Illinois on June 30, 1977. Immediately after purchase, the plane was flown to Detroit. Indeed, there was testimony that delivery of the purchase was taken in Detroit. "A day or two later", the plane was flown to Freeland, Michigan, in order to install the equipment salvaged from the MU-2. While in this state, Master Craft clearly exercised its powers of ownership over the plane since it directed and alone determined that the plane should be repaired in Freeland and later kept at Willow Run. The plane clearly came to rest within this state prior to being thrust into the interstate stream of commerce.

In *Beatrice Foods Co, Inc v Lindley,* 70 Ohio St 2d 29; 434 NE2d 727 (1982), the Ohio Supreme Court held that the storage of the units in Ohio as well as the servicing of the units in Ohio at the taxpayers direction, with the units thereafter being placed in interstate commerce, constituted a taxable moment for purposes of imposing the use tax assessment. We agree.

Furthermore, Master Craft never paid any use tax or sales tax to other states, so that its addi-

tional claim that it is being doubly taxed is not supported. In any event, the Michigan use tax provides a credit for use or sales taxes paid in other states. MCL 205.94(e); MSA 7.555(4)(e). Master Craft has "merely alleged" this risk of double taxation on appeal and has failed to show how the use tax burdens interstate commerce. See *Michigan Fruit Canners, Inc v Dep't of Treasury*, 53 Mich App 1, 7; 218 NW2d 385 (1974). We find no error below.

We further note that the cases relied upon by Master Craft are inapplicable. In *Union Pacific R Co v Utah State Tax Comm*, 110 Utah 78; 169 P2d 804 (1946), the court rejected an argument that the inspection and overhauling of diesel train engines evidenced a period of rest constituting a taxable moment. There, the engines continued to move in interstate commerce both before and after maintenance. Here, the Cessna came to rest in Michigan immediately after purchase and before its interstate journey began. This action created a presumption under the use tax which Master Craft failed to rebut.

In *W R Grace & Co v Comptroller*, 255 Md 550; 258 A2d 740 (1969), the installation work was not performed in the state which sought to impose the use tax. Again, the Cessna remained in Michigan for several months prior to its interstate use. Interestingly, *W R Grace* intimated that "storage" connotes the removal of an object from service. Since the Cessna was clearly removed from service during the time of repairs, the definition of "storage" found in MCL 205.92(c); MSA 7.555(2)(c) would also support imposition of a use tax here under the reasoning of that case. We find of greater significance, however, the fact that Master Craft exercised ownership rights over the Cessna while in this state, in conjunction with the fact

that the Cessna came to rest in Michigan *before* becoming an instrumentality of interstate commerce.

Petitioner also claims that the department conducted an audit in December of 1977, with Master Craft paying the use tax imposed pursuant to that audit. The department allegedly told Master Craft that the sum represented the entire tax liability for the tax period. Petitioner maintains that the department thereafter conducted an impermissible second audit, citing various board decisions to the effect that only one audit is permissible once a taxpayer has paid the determined liability.

The parties stipulated as follows regarding the "second audit":

"The appellant, Mastercraft Engineering, Inc., is a Michigan corporation with plants in Michigan and in Georgia. The corporation was audited by the Department of Treasury for the period January 1, 1974 through September 30, 1977. As a result of this audit, various deficiencies in use tax were imposed, which amount was paid by the taxpayer on December 19, 1977. The only amounts in controversy at this time result from use tax on two airplanes purchased by the appellant. The remaining amounts due the state were assessed on July 26, 1979, after an informal hearing in the amount of $28,706.16 tax plus accrued interest of $6,619.04, being Assessment #B302033."

At the hearing, Master Craft presented only the testimony of John Haswell, its president. Haswell indicated that he was asked "for a given amount of money" (between $8,000 and $10,000) which was then paid, and that he "thought that was the end of it at that time". However, Haswell did not specifically state that the auditor represented that Master Craft's total tax liability would be satisfied once the initial payment was accepted. The record

indicates that the audit covered a wide range of subjects which are not relevant to the instant appeal. We find that Master Craft has failed to present sufficient evidence to support its contention that two separate audits actually occurred. Given the fact that the stipulation recites that the "only amounts in controversy" relate to the airplanes involved herein, we find credence in respondent's assertion (and the tribunal's holding) that there was but one audit, with petitioner paying initially only the uncontested amounts.

Master Craft argues next that it was deprived of its due process right to present a full and complete defense because the board refused to allow it to present evidence regarding the "second auidt". Master Craft supports this argument with an apparent stipulation to the effect that the auditor planned to testify. Board Chairman Donaldson indicated that the auditor's testimony was immaterial to the substantive issues and would not be entertained. Since Master Craft cites no authority for its contentions other than a bland accusation of denial of due process, its arguments lack merit. See *Delta Twp v Eyde,* 40 Mich App 485, 490; 198 NW2d 918 (1972), *affirmed in part* 389 Mich 549; 208 NW2d 168 (1973). Master Craft had every opportunity to present a complete defense. Its president testified regarding the "second audit" but this testimony falls far short of satisfying petitioner's burden of proof. If the auditor had testified, it is safe to assume the testimony would have favored the department. Furthermore, Master Craft failed to object to this ruling at the hearing. This claim does not present grounds for reversal.

Master Craft's argument that it was denied appropriate appellate review under MCL 205.751; MSA 7.650(51) is also lacking in merit. That provi-

sion requires that a decision of the tribunal be in writing "or stated in the record" and include a factual statement and conclusions of law. Although the actual opinion, standing alone, would have been insufficient, the proposed judgment was of a rather comprehensive nature and was incorporated into the tribunal's final order. The only issue not covered in the proposed judgment, petitioner's jurisdictional argument, was separately addressed. The standards of MCL 205.751; MSA 7.650(51) were met.

Finally, Master Craft argues that it demonstrated a reasonable basis for limiting the accrual of interest. The tribunal refused this request because Master Craft failed to provide the tribunal with a copy of the recommendation of the hearing officer and because petitioner failed to provide "any reason in support of an abatement of interest". On appeal, petitioner asserts that abatement is in order since the delay was not due to its actions and the board failed to render a timely decision.

Petitioner has attached to its appellate brief the hearing officer's recommendation, which clearly states that the intent to assess "be finalized as issued without further accrual of interest". We agree with petitioner that this was a matter readily confirmable by the tribunal. Therefore, we reject the tribunal's statement on this matter that it could not exercise its discretion without a copy of the recommendation. Furthermore, because the delay in reaching a decision was not attributable to actions on the part of petitioner, we do not find it equitable for petitioner to be assessed interest over this long period of time. Accordingly, interest should not have accrued between the date when the decision should have been reached, that is,

August 6, 1980, through the date when such was actually rendered, that being August 30, 1983.

Affirmed in part and reversed in part. No costs, a question of public importance being involved.