NATIONAL MUSIC CAMP v GREEN LAKE TOWNSHIP

NATIONAL MUSIC CAMP v LAKE TOWNSHIP

1. TAXATION—CORPORATIONS—EXEMPTIONS—SUBSTANCE AND FORM.

The substance of a corporate arrangement rather than its form should be the guiding principle in determining corporate property ownership and tax exemption status.

2. TAXATION—CORPORATIONS—PROPERTY EXEMPTIONS—EDUCATIONAL CORPORATIONS—SHARED USE—EDUCATIONAL USE.

Tax exempt status should not be denied to property owned solely by one educational corporation on the basis that use of the property is shared with other educational corporations where the property is clearly used by all of the corporations only for educational purposes within the meaning of the tax exemption statute.

3. TAXATION—CORPORATIONS—EDUCATIONAL CORPORATIONS—PROPERTY EXEMPTIONS—INTERWOVEN ACTIVITIES.

Multiple separately incorporated educational corporations may be held to be the functioning arms of a single corporation for the determination of taxation exemptions where the purposes, officers, directors, management and locations of the corporations are so commingled, interwoven and connected that for all practical purposes they are one corporation.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 3] 15 Am Jur 2d, Colleges and Universities § 2.

71 Am Jur 2d, State and Local Taxation §§ 365–380.

Property used by personnel as living quarters or for recreation purposes as within contemplation of tax exemptions extended to property of religious, educational, charitable, or hospital organizations. 15 ALR2d 1064.

Exemption from taxation of college fraternity or sorority house. 66 ALR2d 904.

Property used as dining rooms or restaurants as within tax exemptions extended to property of religious, educational, or hospital organizations. 72 ALR2d 443.

Garage or parking lot as within tax exemption extended to property of educational, charitable, or hospital organizations. 33 ALR3d 938.

Appeal from the Michigan Tax Tribunal. Submitted June 8, 1977, at Grand Rapids. (Docket Nos. 29339, 29340.) Decided July 7, 1977.

Petitions by National Music Camp to the Michigan Tax Tribunal to have certain real property owned by petitioners in Green Lake Township and Lake Township declared exempt from taxation by those townships. Exemptions denied. Petitioner appeals. The cases were consolidated on appeal. Reversed and remanded.

*Murchie, Calcutt & Sondee,* for petitioner.

*Edward C. Kilian,* for respondent Lake Township.

Before: R. B. BURNS, P. J., and D. E. HOLBROOK and M. B. BREIGHNER,* JJ.

D. E. HOLBROOK, J. In April of 1976 in two separate cases the Michigan Tax Tribunal determined that certain of plaintiff's properties were not tax exempt and could be assessed by the respective townships. Plaintiff appeals by right, pursuant to MCLA 205.753; MSA 7.650(53).

The instant appeal concerns the Interlochen Educational Complex located at Interlochen, Michigan. This facility is composed of four corporate structures: National Music Corporation, which runs a summer music camp and which is the property owner, hereinafter referred to as NMC; Interlochen Arts Academy, a high school, hereinafter referred to as IAA; Interlochen Center for the Arts, a fund raising corporation; and Interlochen College of Creative Arts, currently a corporate shell.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The first claim concerns plaintiff's land known as the Point Betsie property located in Lake Township, Benzie County. The property consists of 92 acres of undisturbed dunes on Lake Michigan and is used by the NMC in the summer and by the IAA during the school year.

The record indicates that during the summer approximately 2,500 NMC students visit the property. The purposes of these trips include recreation, a chance to get away, counsellor training and some nature study. During the school year groups of IAA students visit Point Betsie primarily for biological and ecological study. Also, it is used for limited recreational activities.

Point Betsie has remained unimproved, a virtually untouched land unspoiled by people, located near the 60,000 acre Sleeping Bear Dunes National Lakeshore.

MCLA 211.7; MSA 7.7, provides in pertinent part as follows:

"The following property shall be exempt from taxation:

* * *

"Fourth, Such real estate as shall be owned and occupied by library, benevolent, charitable, educational or scientific institutions and memorial homes of world war veterans incorporated under the laws of this state with the buildings and other property thereon while occupied by them solely for the purposes for which they were incorporated."

The Tax Tribunal held that "[p]etitioner has failed to bring itself under the exemption provisions of MCLA 211.7 [MSA 7.7] by reason of its not occupying or using these parcels in appreciable quantum for the stated purposes of its educational organization".

We find the "test" used by the Tax Tribunal inappropriate.[1] No similar type property operated by educational institutions could pass this too stringent test. Possibly such a test may have been appropriate half a century ago when environmental concerns were virtually nonexistent and nature study centers were rare. However, now our concepts of education are greatly expanded. Indeed, were such an extreme test utilized by the courts, innovative educational ideas would be stifled. Such a rigorous test would encourage the traditional modes of conduct of education. Swamps, dunes, bogs, forest would soon give way to dormitories, student centers, class room buildings, etc. Creativity would be discouraged, conformity encouraged.

It is important to remember that Const 1963, art 8, § 1 provides that: "Religion, morality and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged." Exemption from taxation is often the only form of encouragement that our laws can provide. *Webb Academy v City of Grand Rapids,* 209 Mich 523; 177 NW 290 (1920). Recently the North Dakota Supreme Court observed in *Evangelical Lutheran Good Samaritan Society v Board of County Commissioners, Ramsey County,* 219 NW2d 900, 905 (ND, 1974):

" "The theory that the rule requiring strict construc-

---

[1] Apparently this test was derived from *Lake Louise Christian Community v Hudson Township,* 10 Mich App 573; 159 NW2d 849 (1968). This case is significantly different with respect to the facts. The conclusion of the Court in *Lake Louise* was that:

"[A]s a matter of law that plaintiff has failed to bring itself under the exemption provisions of CL 1948, § 211.7, as amended by PA 1963, No. 148 (Stat Ann 1965 Cum Supp § 7.7), by reason of its not occupying or using these parcels in any appreciable *quantum* for the stated purposes of its religious organization, and that such decisions by the trial court were not erroneous." *supra,* at 581–582.

We expressly hold that this *quantum* of use test does not apply to educational organizations within the scope of the statute.

tion of a tax exemption statute demands that the narrowest possible meaning should be given to words descriptive of the objects of it would establish too severe a standard. A liberal and not a harsh or strained construction is to be given to the terms "educational," "religious," and "charitable" in order that the true intent of the constitutional and statutory provisions may be realized. The judicial interpretation of such statute should always be reasonable.' " Citing *Lincoln Woman's Club v City of Lincoln,* 178 Neb 357; 133 NW2d 455, 459 (1965).

This property is unusually suited for ecological study, as well as serving as a remarkably relaxed atmosphere for educational study and conference. The land remains in a state unspoiled by the touch of man. There was no commercial use of the area, although there was limited recreational use, primarily in conjunction with educational functions. Although class rooms were not constructed and traditional text books rarely used, it is clear to us that this property furthered the education of plaintiff's students. The property was used in a manner consistent with the nature of the land in such a way that the purpose for which the owning institution is exempt, education, was plainly advanced.

The other property with which we are concerned consists of approximately 20 acres in Green Lake Township. Plaintiff challenged the tax assessments and the Tax Tribunal apparently would have found tax exempt status if it were not for the fact that the NMC owned the property and used it during the summer while the IAA used the property during the regular school year.

A four-part test for exemption has been developed:

" '(1) The real estate must be owned and occupied by the exemption claimant;

" '(2) The exemption claimant must be a library, benevolent, charitable, educational or scientific institution;

" '(3) The claimant must have been incorporated under the laws of this State;

" '(4) The exemption exists only when the buildings and other property thereon are occupied by the claimant solely for the purposes for which it was incorporated.' " *Michigan Baptist Homes & Development Co v City of Ann Arbor,* 396 Mich 660, 670; 242 NW2d 749 (1976), quoting *Engineering Society of Detroit v Detroit,* 308 Mich 539, 550; 14 NW2d 79 (1944).

The Tax Tribunal concluded that this test requires both exclusive ownership and exclusive use of the property by the claimant, herein NMC. The Tax Tribunal concluded that NMC and IAA were two separate legal entities using property owned solely by NMC. This according to the Tribunal rendered the property nonexempt under MCLA 211.7; MSA 7.7, and the test set forth above.

Both parties assumed that the MCLA 211.7; MSA 7.7 tax exemption requires that the owner of the property must occupy it for educational purposes to the substantial exclusion of all others.[2] Defendant does not contest that the use is sufficient under the statute.[3] The only question is whether the NMC and IAA are one institution for property tax purposes despite the technical corporate division.

If NMC and IAA were merely the functioning arms of an umbrella corporation organized for tax

---

[2] The "substantial exclusion of all others" language is apparently derived from *Webb Academy v Grand Rapids,* 209 Mich 523; 177 NW 290 (1920). We need not decide whether that is the correct test since that is not at issue.

[3] The Tax Tribunal also indicated in its opinion that respondent Green Lake Township did not contest "[p]etitioner's qualification as an exempt organization".

exempt purposes, there would appear to be no barrier to tax exempt status. See *People for the use of Regents of University of Michigan v Pommerening,* 250 Mich 391; 230 NW 194 (1930), OAG, 1942, No 24965 (Dec 1, 1942), and *State ex rel Wisconsin University Bldg Corp v Bareis,* 257 Wis 497; 44 NW2d 259 (1950). See also *Ann Arbor v The University Cellar, Inc,* 65 Mich App 512; 237 NW2d 535 (1975), *District of Columbia v Catholic Education Press, Inc,* 91 US App DC 126; 199 F2d 176 (1952), and *Knapp-Stiles, Inc v Department of Revenue,* 370 Mich 629; 122 NW2d 642 (1963).

The substance of an arrangement rather than its form should be the guiding principle in determining ownership and tax exemption status. See *United Artists Corp v Dept of Treasury,* 66 Mich App 289, 295; 238 NW2d 841 (1975), *Ann Arbor, supra,* at 517–518. In the instant case there is technically no umbrella corporation, but as dissenting tax judge Koney pointed out, the purposes, officers, directors, management and location of the four Interlochen educational corporations are so commingled, interwoven and connected that they are in reality and for all practical purposes one corporation. Or to look at it in another way, the Interlochen Board of Trustees and Officers are the common umbrella. The four corporations are merely the board's functioning arms. Any other result exalts form over substance.

Were such a technical analysis of MCLA 211.7; MSA 7.7, adopted by us, this would destroy the tax exempt status of the land in question under the present facts. However, we note that the Interlochen educational complex could then avoid taxes by a simple corporate reorganization in which the NMC and the IAA would become the agents of an umbrella corporation. The organization then would

be treated by the public and function as it always has.

Where the subject property is clearly used for educational purposes within the meaning of the tax exemption statute, it would be unreasonable to deny tax exempt status on the basis of corporate organization. Obviously, the Interlochen facility is looked upon as one institution. The organization treats itself basically as one organization sharing physical plant, personnel, trustees, and officers. To force a purely technical corporate reorganization upon claimant with the loss of tax exemption status for intervening years would be to deny justice. We cannot believe the Legislature intended the tax exemption statute to catch bona fide educational organizations in such a fine mesh of legal technicalities.

We reverse the Tax Tribunal's decision in both cases and remand for proceedings consistent with this opinion. Costs to plaintiff.