**CORPORATION OF the EPISCOPAL CHURCH IN UTAH, Petitioner,**

v.

**UTAH STATE TAX COMMISSION and County Board of Equalization of Salt Lake County, State of Utah, Respondents.**

No. 940559.

Supreme Court of Utah.

June 28, 1996.

Carl F. Huefner, Charles P. Sampson, Stewart M. Hanson, Jr., Salt Lake City, for petitioner.

Jan Graham, Atty. Gen., John C. McCarrey, Kelly W. Wright, Asst. Attys. Gen., Salt Lake City, for Tax Commission.

Douglas R. Short, Karl L. Hendrickson, Bill Thomas Peters, Salt Lake City, for County Board of Equalization.

STEWART, Associate Chief Justice:

The Corporation of the Episcopal Church in Utah (the "Church") applied for property tax exemptions for two vacant parcels of land for 1991 and 1992. The Board of Equalization rejected the applications, and the State Tax Commission upheld the Board's ruling. We affirm the Commission's decision.

The Church is a nonprofit religious organization formed under Utah law to hold property for the Episcopal Diocese of Utah. In 1990, the Church acquired two adjoining vacant parcels of land for the express purposes of constructing a house of worship and holding outdoor religious services. From 1990 until the summer of 1992, the Church maintained the lots but did not begin construction of a building or commence any other sort of improvement. However, during that time, the Church did use the property for religious purposes. For approximately two hours each year in 1990, 1991, and 1992, the Church held religious services on the property. In August of 1990, Church members gathered on the land for a service of thanksgiving. In April and September of 1991, the Church conducted the service of Divine Office in conjunction with parish vestry meetings on the vacant lot. In April of 1992, Church members held a ceremonial ground-breaking service on the property. Finally, in October of 1992, the Church held a service for the blessing of animals in observance of the Feast Day of St. Francis of Assisi. The Church makes no claim that any other activity has been conducted there.

■ Pursuant to section 59–2–1101(1) of the Utah Code, the Church paid the assessed taxes for 1990 but applied for exemptions for 1991 and 1992.[1] The Board denied the Church's 1991 application, and the Church appealed to the Commission. The Board also denied the Church's 1992 application, and the two cases were consolidated for appeal. The Commission upheld the Board and held that the property's use for religious purposes was "de minimis and insufficient to qualify the property for exemption from

---

1. The statute requires that claimants be owners of the property on January 1 of the year for which they request the exemption for their re- quests to be considered. The Church purchased the two lots in question on July 20 and November 30 of 1990.

property tax." This case comes to us on appeal pursuant to Article VIII, section 3 of the Utah Constitution and section 78–2–2(3)(e)(ii) of the Utah Code. The Church challenges only the Commission's conclusion of law that the parcels were not used exclusively for religious purposes. We review that ruling under a correctness standard and accord no deference to the Commission's ruling. *Board of Equalization v. Utah State Tax Comm'n ex rel. Benchmark Inc.*, 864 P.2d 882, 884 (Utah 1993); *49th St. Galleria v. Tax Comm'n*, 860 P.2d 996, 999 (Utah.Ct. App.1993).

■ The question on appeal is whether a church-owned vacant lot that for two hours each year was used as the site of religious services but for the balance of each year was unoccupied and unused is exempt from the ad valorem property tax as "property ... used exclusively for religious ... purposes." Utah Const. art. XIII, § 2(2)(c).

The Church asserts that the Commission's method for determining exclusive use fails to pass constitutional muster. It argues that by applying a temporal quantitative analysis to determine whether the Church's use of the land in 1991 and 1992 constituted an exclusive religious use, the Commission impermissibly entangled itself in evaluating the validity of religious practices, the consequence of which would allow the Commission to prefer one form of religious practice over another in violation of federal and state constitutions. We disagree with the Commission's rationale because its inherent subjectivity lends itself to a degree of arbitrariness. We adopt a different rationale which we believe overrides

the potential for arbitrariness, and we need not address the constitutional arguments.

Article XIII, section 2(2)(c) of the Utah Constitution lists among those properties that are exempt from property taxes "[p]roperty owned by a non-profit entity which is used exclusively for religious, charitable or educational purposes...."[2] Recognizing that each exemption is rooted in the same policy concerns, this Court has always treated the three exempt categories similarly. *See Benevolent & Protective Order of Elks v. Tax Comm'n*, 536 P.2d 1214, 1217 (Utah 1975).[3] Because nearly all the litigation involving Article XIII, section 2(2)(c) has related to charities, our review of precedent will focus on the exemption as applied to charities.

■ The exemption provided in Article XIII, section 2(2)(c) is an exception to the general rule that all land is taxable. Utah Const. art. XIII, § 2(1). Exemptions are strictly construed. *Salt Lake County v. Tax Comm'n ex rel. Good Shepherd Lutheran Church*, 548 P.2d 630, 631 (Utah 1976). That rule should not be so narrowly applied, however, that it defeats the purpose of the exemptions. *Utah County By and Through County Bd. of Equalization v. Intermountain Health Care, Inc.*, 725 P.2d 1357, 1359 (Utah 1986); *Loyal Order of Moose, # 259 v. County Bd. of Equalization*, 657 P.2d 257, 262 (Utah 1982). The burden of establishing the exemption lies with the entity claiming it, although that burden must not be permitted to frustrate the exemption's objectives.

■ The term "used exclusively" in Article XIII, section 2(2)(c) is the pivotal phrase in the constitutional provision. We hold that

---

**2.** This provision was amended to revise the previous law that ."lots with the buildings thereon used exclusively for either religious worship or charitable purposes ... shall be exempt from taxation." Utah Const. art. XIII, § 2 (amended 1982); 1982 Utah Laws 458. The amendment brought the language of the Constitution into conformity with the language of section 59–2–1101(2)(d) of the Utah Code. The statute provides, "The following property is exempt from taxation: ...; (d) Property owned by a non-profit entity which is used exclusively for religious, charitable or educational purposes." While the language of the revised constitutional provision implies a nuanced understanding of the exemption—one which includes educational

institutions, broadens "religious worship" to "religious ... purposes," and recognizes that lots without appurtenant buildings may also qualify for exemptions—we see no reason to depart from our accepted construction of "used exclusively."

**3.** One scholar explained the purposes underlying religious use exemptions as follows: "The religious and moral culture afforded by [religious institutions] is deemed to be beneficial to the public, necessary to the advancement of civilization and the promotion of the welfare of society." Carl Zollman, *American Civil Church Law* 237 (1969).

the term "used exclusively" requires that the land in question be actually used or committed to a use that is exclusively religious in nature. *See* Utah Admin. Code R884–24–40P. Of course, the use of land can take many forms. For example, land can be used for growing crops, religious activities, or investment purposes or held as the future site for a building of worship or some other improvement.

We have held that intent to build a philanthropic facility in the future is not an exempt use. *Utah County By and Through County Bd. of Equalization v. Intermountain Health Care, Inc.,* 725 P.2d 1357, 1360 n. 3 (Utah 1986). In the instant case, the Commission found that the Church's use of the property for religious purposes was de minimis and not exempt under Article XIII. The difficulty of the Commission's approach is that it simply uses a subjectively applied label as the basis for its legal conclusion. If two hours out of the year is insufficient to establish exclusive use, what then about two days or two months? Neither we nor the Commission can articulate with any clarity what constitutes de minimis usage as it relates to exclusive use. Nor does the Constitution support any such standard.

Nevertheless, we do not agree with the Church's contention that its religious activities were "exclusive" for purposes of the exemption provision. While religious services do, of course, qualify as a religious use, the Church's use of the two lots for the majority of time as sites for future development defeats the exemption.

This Court has had occasion only once to construe "used exclusively" as it applies to vacant land. In *Intermountain Health Care,* 725 P.2d 1357, we considered the taxability of property on which a hospital was being constructed. We held that while the land clearly could not have been exempt prior to commencement of construction, once construction began the property qualified for an exemption. *Id.* at 1360. Prior to construction, the land was not actively used. Active use, or commitment to active use, is a prerequisite for land to be held exempt.

■ Based on our holding in *Intermountain Health Care,* the Commission issued a rule construing "used exclusively." The rule provides as follows:

> Vacant land which is not actively used by the religious organization, is not deemed to be devoted exclusively to religious purposes, and is therefore not exempt from property taxes.
>
> 1. Vacant land which is held for future development or utilization by the religious organization is not deemed to be devoted exclusively to religious purposes and therefore not tax exempt.
>
> 2. Vacant land is tax exempt after construction commences or a building permit is issued for construction of a structure or other improvements used exclusively for a religious purpose.

Utah Admin. Code R884–24–40P–C. The Commission adopted this rule pursuant to its constitutional mandate to "administer and supervise the tax laws of the state," Utah Const. art. XIII, § 11, and its statutory mandate to "adopt rules and policies consistent with the Constitution and laws of the state, to govern county boards and officers in the performance of any duty relating to assessment, equalization, and collection of taxes." Utah Code Ann. § 59–1–210(3). As the statute indicates, the Commission's rules may neither expand nor limit constitutional exemptions. *Howell v. County Bd. of Cache County,* 881 P.2d 880, 885 (Utah 1994). We hold that the rule faithfully reflects the language of the Constitution and the construction this Court has accorded it. Although the rule was not in effect until 1992, it accurately expresses the law as it existed prior to that time.

The Church argues, however, that for 8,758 hours out of the year, the land is committed to no use at all—that its only use is that to which it is put for two hours each year. We believe that the Church is mistaken. Property held for future development *is* being used. Undeveloped land is subject to a wide variety of uses, including nonexempt uses such as holding it for investment purposes. If church-owned property used for nonexempt purposes were not taxable, nothing could prevent a church from purchasing land for speculation and selling it years later

for a significant profit—all the while remaining completely unburdened by property taxes.

The Church marshals support from several cases from other states. *See, e.g., Columbus v. Outreach for Christ, Inc.,* 241 Ga. 2, 243 S.E.2d 42 (1978) (property on which parishioners held regular prayer service and on which new church was being built was held exempt); *Pickens County Bd. of Tax Assessors v. Atlanta Baptist Assoc., Inc.,* 191 Ga. App. 260, 381 S.E.2d 419 (1989) (partially improved lot used only for religious retreats held exempt from taxation); *National Music Camp v. Green Lake Township,* 76 Mich. App. 608, 257 N.W.2d 188 (1977) (undeveloped land used as nature reserve and music camp held exempt).

These cases do not support the Church's position but rather the conclusion we have reached. The determination of whether a parcel of land is tax exempt does not turn on the property's level of development. Rather, the exemption hinges on the actual use of the property and, in the case of Utah, whether it can be said that the religious use is exclusive. In each of the above cases, the land was committed to an exempt use; it was not held for the purpose of future development.

Construction of a church on church-owned property indicates that the property is "irrevocably committed" to a religious use, not simply held for future development. *See Utah County By and Through County Bd. of Equalization v. Intermountain Health Care, Inc.,* 725 P.2d 1357, 1359 (Utah 1986). We have held that the commencement of construction qualifies the property for tax exemption. *Id.* Contrary to the Commission's conclusion, we do not require that property be irrevocably committed to a particular exempt purpose to qualify for an exemption. Rather, an irrevocable commitment is merely one indicium of the nonprofit entity's intent.[4] It is that intent and

its manifestation which determine whether property is exempt.

Here, the Church clearly manifested its intent with respect to the two parcels of land. The exemption applications that the Church filed in 1991 and 1992 required the Church to state "the activities and functions for which the property is used." The Church listed "[c]urrent outdoor religious worship and other religious activities and future site for church building construction." It is clear, then, that even the Church viewed future development, a nonexempt purpose for holding the land, as at least one intended use for the property. Future development of a lot for an exempt purpose is not within the constitutional purview of the limited class of property uses exempt from taxation. *Utah County By and Through County Bd. of Equalization v. Intermountain Health Care, Inc.,* 725 P.2d 1357, 1359 (Utah 1986). As the Texas Supreme Court wrote, "[I]ntention to use, without use, is not sufficient" for exemption. *Hedgecroft v. Houston,* 150 Tex. 654, 244 S.W.2d 632, 636 (1951). The intention must be manifested by an affirmative act.

On the other hand, an incidental nonexempt use of an exempt property does not necessarily disqualify the property for an exemption. In *Loyal Order of Moose, # 259 v. County Board of Equalization,* 657 P.2d 257 (Utah 1982), we articulated a standard for determining whether an otherwise exempt property used for some purposes that are not exempt should be held taxable. We held that "a use of true minor import or a de minimis use will not defeat an exemption." *Id.* at 264.[5] Although determining what qualifies as a de minimis use is a highly imprecise process, we held that "where the non-charitable use rises to the level that it must be weighed against the charitable use in order to determine which use is dominant,

---

4. We can conceive of situations in which no "permanent" structure is built yet the land would be considered "used exclusively" for religious purposes.

5. Our holding in *Moose Lodge* required that we overrule *Salt Lake Lodge # 85, B.P.O.E. v. Groesbeck,* 40 Utah 1, 120 P. 192 (1911), and subse-

quent cases that liberally construed "exclusively" to mean "dominant" or "primary." We returned to the strict construction of "exclusively" enunciated in *Parker v. Quinn,* 23 Utah 332, 64 P. 961 (1901). *Loyal Order of Moose, # 259 v. County Bd. of Equalization,* 657 P.2d 257 (Utah 1982).

then clearly the non-charitable use is well beyond the point of de minimis and should unquestionably preclude an exemption." *Id.* at 263.

It is true that the Church used the property for religious purposes for only two hours each year. The other purpose for which the land was held was future development. The use of the property for that nonexempt purpose was clearly not de minimis. We conclude, therefore, that the property's exclusive use was as a site held for future development. *But see Loyal Order of Moose, # 259 v. County Bd. of Equalization,* 657 P.2d 257 (Utah 1982). Accordingly, the Church is not entitled to receive an exemption for the years in question.

For the reasons stated above, the Commission's ruling is affirmed.

DURHAM and RUSSON, JJ., concur.

ZIMMERMAN, C.J., and HOWE, J., concur in the result.