CZARS, INC v DEPARTMENT OF TREASURY

Docket No. 199840. Submitted August 12, 1998, at Grand Rapids. Decided February 2, 1999, at 9:10 A.M.

Czars, Inc., petitioned the Tax Tribunal, seeking a redetermination of a use tax assessment issued by the Department of Treasury with respect to an aircraft purchased by the petitioner. The petitioner, a Delaware corporation, and Grand Aire Express, a Michigan corporation, are both wholly owned by Tahir Cheema. The petitioner was incorporated in Delaware for the purpose, at least in part, of purchasing cargo aircraft to be used by Grand Aire in an effort to shield Grand Aire from the use tax liability that cargo aircraft were subject to at the time of the petitioner's incorporation in February 1994. In May 1994, the petitioner purchased an aircraft in Arizona and registered it in its name with the Federal Aviation Administration. Thereafter, a Grand Aire pilot flew the aircraft from Arizona to Michigan, and the petitioner permitted Grand Aire to use the aircraft as a cargo aircraft. In June 1994, the Legislature amended the language of subsection 4(x) of the Use Tax Act, MCL 205.94(x); MSA 7.555(4)(x), so as to exempt a domestic air carrier from use tax liability with respect to the carrier's use of cargo aircraft of the type at issue. It is undisputed that Grand Aire was eligible for the cargo aircraft exemption, but that the petitioner was not eligible for the exemption unless it could somehow be permitted to benefit from Grand Aire's exemption. The Tax Tribunal upheld the use tax assessment, holding that the petitioner had used the aircraft within the state within the meaning of the Use Tax Act, that the petitioner was not entitled to rely on the cargo aircraft exemption enjoyed by Grand Aire, and that the petitioner was not exempt from use tax liability on the basis of being the lessor of exempt property. The petitioner appealed.

The Court of Appeals *held*:

1. Because the aircraft was brought into Michigan less than three weeks after it was purchased in Arizona, the Tax Tribunal properly relied on the statutory presumption of subsection 3(1) of the Use Tax Act, MCL 205.93(1); MSA 7.555(3)(1), which provides that tangible personal property purchased elsewhere and brought into this state within ninety days of the date of purchase is presumed to be subject to use tax liability and is considered as acquired for stor-

age, use, or other consumption in this state. Accordingly, the petitioner bore the burden of rebutting the presumption or establishing that an exemption applies. The petitioner concedes that there is no lease or documentary evidence showing that it totally or permanently relinquished control of the aircraft to Grand Aire in Arizona, and there is ample evidence showing that the petitioner exercised rights and powers of ownership in Michigan by allowing Grand Aire to modify the aircraft, to obtain approval to fly the aircraft, and to use the aircraft in its cargo transport business. Accordingly, the petitioner failed to rebut the statutory presumption that the petitioner used the aircraft in Michigan within the meaning of the Use Tax Act.

2. The petitioner's assertion that it should be able to assert the statutory exemption afforded Grand Aire is without merit. Although the petitioner and Grand Aire have a common owner, this is not a situation in which the exempt entity owns and controls the nonexempt entity so that the two, for use tax purposes, may be said to be but a single entity entitled to assert a tax exemption. Indeed, the petitioner was incorporated in the hope of allowing Grand Aire to avoid Michigan use tax liability. It is not exalting form over substance to give effect to the original intent for which the petitioner was incorporated, which was that there were to be two separate and distinct corporate entities for use tax purposes. Accordingly, the Tax Tribunal properly refused to allow the petitioner to assert Grand Aire's exemption from use tax liability with respect to the aircraft at issue.

3. Assuming that the petitioner had established that it had leased the aircraft to Grand Aire, which it did not, it would not be exempt from use tax liability under the industrial processor exemption of subsection 4(g)(i) of the Use Tax Act, MCL 205.94(g)(i); MSA 7.555(4)(g)(i), because the petitioner has not shown that Grand Aire is an industrial processor within the meaning of that subsection. Neither has the petitioner shown how rule 82, 1979 AC, R 205.132, which allows a party engaged in the business of renting or leasing personal property to opt either to pay the use tax at the time of purchase or to pay the tax on the rental receipts, provides a basis for concluding that the petitioner is entitled to benefit from Grand Aire's exemption, even assuming that the petitioner had shown compliance with the requirements of rule 82 and a formal lease with Grand Aire.

Affirmed.

JANSEN, J., dissenting, stated that the record does not support a finding that the petitioner exercised a right or power over the aircraft incident to its ownership of the aircraft such that it can be

said that the petitioner "used" the aircraft within the meaning of the Use Tax Act. The decision of the Tax Tribunal should be reversed, and the petitioner should be found not liable for use tax with respect to the aircraft in question.

1. TAXATION — USE TAX — PROPERTY BROUGHT INTO STATE — PRESUMPTIONS — BURDEN OF GOING FORWARD.

   Tangible personal property that is purchased elsewhere and is brought into Michigan within ninety days of its purchase is presumed to be subject to taxation under the Use Tax Act and is considered as acquired for storage, use, or other consumption in Michigan; a party whose property is subject to the statutory presumption has the burden of rebutting the presumption or showing that an exemption to use tax liability applies (MCL 205.93[1]; MSA 7.555[3][1]).

2. TAXATION — USE TAX — EXEMPTIONS FROM TAXATION — SISTER CORPORATIONS.

   A corporation that is not itself entitled to an exemption from use tax liability may not assert an exemption of a sister corporation that is exempt from use tax liability with respect to tangible personal property that was purchased by the nonexempt corporation but used by the exempt corporation where the two corporations are owned and controlled by a common entity and the exempt corporation does not own and control the nonexempt corporation.

*Honigman Miller Schwartz and Cohn* (by *James H. Novis* and *Frederick M. Baker, Jr.*), for the petitioner.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Glenn R. White*, Assistant Attorney General, for the respondent.

Before: SAAD, P.J., and JANSEN and HOEKSTRA, JJ.

SAAD, P.J. Petitioner, Czars, Inc., appeals as of right from a decision of the Michigan Tax Tribunal upholding a use tax assessment arising from its purchase of

an aircraft in Arizona for use in Michigan by a sister corporation, Grand Aire Express.[1] We affirm.[2]

I

NATURE OF THE CASE

This case addresses the use tax assessment levied against an aircraft owned by petitioner. On November 15, 1994, the Department of Treasury issued a final use tax assessment against petitioner for the purchase of the aircraft because petitioner "used" the aircraft in Michigan, triggering the provisions of the Use Tax Act.[3] The Michigan Tax Tribunal upheld the assessment. Petitioner raises three issues in its appeal of the Tax Tribunal's decision: (1) petitioner did not "use" the aircraft within the meaning of the statute; (2) petitioner is entitled to rely on the use tax exemption enjoyed by its sister corporation, Grand Aire; and (3) even if petitioner did "use" the aircraft, it did so only as the lessor of exempt property. We find these arguments to be without merit, and we accordingly affirm the Tax Tribunal's decision for respondent.

II

FACTS AND PROCEEDINGS

Tahir Cheema is the sole shareholder of petitioner, a Delaware corporation not engaged in any business activity, and Grand Aire, a Michigan corporation engaged in the business of air cargo transportation.

---

[1] Petitioner is not itself a domestic air carrier within the meaning of the use tax act and, therefore, is not exempt from use tax. See MCL 205.94(x); MSA 7.555(4)(x).

[2] Petitioner initially challenged the tax assessment on constitutional grounds, but abandoned these arguments while the case was before the Tax Tribunal.

[3] MCL 205.91 *et seq.*; MSA 7.555(1) *et seq.*

Before June 23, 1994, aircraft used for cargo transport were subject to the Michigan use tax; however, aircraft used in passenger flights by domestic carriers were exempt under MCL 205.94; MSA 7.555(4). In an effort to avoid taxation on Grand Aire's cargo planes, Cheema incorporated petitioner in Delaware on February 24, 1994. Cheema admits that his intent, at least in part, was to register aircraft in petitioner's name, in order to shield Grand Aire from the use tax and other liabilities. Other than the aircraft, petitioner had no assets. It conducted no business and employed no workers.

On May 24, 1994, petitioner purchased an aircraft in Arizona and registered it with the Federal Aviation Administration (FAA) in petitioner's name.[4] On June 10, 1994, a Grand Aire pilot flew the aircraft from Arizona to Michigan under a special permit the FAA issued to Grand Aire. Shortly after the plane was brought to Michigan, on June 23, 1994, the Legislature amended the Use Tax Act so as to exempt air cargo carriers from the use tax. See MCL 205.94(x); MSA 7.555(4)(x) as amended by 1994 PA 214 and further amended by 1994 PA 424. It is undisputed that Grand Aire was eligible for the exemption, but that petitioner was not, unless petitioner could somehow be permitted to benefit from Grand Aire's exemption.

Meanwhile, petitioner allowed Grand Aire to use the aircraft in the latter's cargo business. Petitioner never prepared a lease agreement, never received any consideration, and never applied for a use tax registration. Grand Aire modified and operated the aircraft as a cargo plane and paid taxes on the income it

---

[4] Nine other aircraft have also been registered in Czars' name.

made from those flights. Grand Aire also held the license and maintained logs to comply with FAA regulations. Petitioner was not licensed to operate the plane.

On November 15, 1994, the Department of Treasury issued a final use tax assessment against petitioner for the purchase of the plane because the plane was being used in Michigan. Cheema thereby faced a bitter irony. If he had purchased and registered the plane in Grand Aire's name, no use tax could have been assessed against the plane. Instead, the plane was taxed only because of the structure of the operations that Cheema formulated to avoid the tax. Petitioner unsuccessfully petitioned the Tax Tribunal to set aside the assessment, and petitioner now appeals.

III

ANALYSIS

"In the absence of fraud, review of a decision by the Tax Tribunal is limited to determining whether the tribunal erred in applying the law or adopted a wrong principle; its factual findings are conclusive if supported by competent, material and substantial evidence on the whole record." *Michigan Bell Telephone Co v Dep't of Treasury*, 445 Mich 470, 476; 518 NW2d 808 (1994). "[A]mbiguities in the language of a tax statute are to be resolved in favor of the taxpayer." *Id.* at 477. However, exemptions are to be strictly construed in favor of the taxing authority. *Edison v Dep't of Revenue*, 362 Mich 158, 162; 106 NW2d 802 (1961).

## A. WHETHER PETITIONER "USED" THE AIRCRAFT

Petitioner argues that there is no factual support for the tribunal's conclusion that it used, or may be deemed to have used, the subject aircraft in Michigan such that it is liable for the use tax assessed by the department. According to petitioner's argument, petitioner's passivity while Grand Aire actively used the aircraft cannot, as a matter of law, establish a taxable use by petitioner. We disagree.

MCL 205.92(b); MSA 7.555(2)(b) defines "use" as follows:

> "Use" means the exercise of a right or power over tangible personal property incident to the ownership of that property including transfer of the property in a transaction where possession is given.

Additionally, MCL 205.93(1); MSA 7.555(3)(1) provides:

> For the purpose of the proper administration of this act and to prevent the evasion of the tax, it is *presumed* that tangible personal property purchased [elsewhere] is subject to the tax *if brought into the state within 90 days of the purchase date* and is considered as acquired for storage, use, or other consumption in this state. [Emphasis added].

This presumption applies here because the aircraft was brought into Michigan less than three weeks after it was purchased and because it was purchased for use in Michigan. Petitioner, therefore, bore the burden of rebutting the presumption or establishing that an exemption applies. *Kellogg Co v Dep't of Treasury*, 204 Mich App 489, 493; 516 NW2d 108 (1994).[5]

---

[5] We find no merit in petitioner's contention that the Tax Tribunal improperly held it to a "reasonable doubt" standard of proof. In accor-

Petitioner concedes that there is no lease or other documentary evidence showing that it totally or permanently relinquished control of the aircraft to Grand Aire in Arizona. In addition to allowing Grand Aire to fly the plane to Michigan (thereby exercising ownership rights in Arizona), petitioner also permitted Grand Aire in Michigan to modify the plane extensively, to obtain FAA approval to fly the plane, and to make use of the plane in Grand Aire's cargo transport business. Under these circumstances, petitioner failed to rebut the presumption that it exercised rights and powers of ownership both in Arizona and in Michigan and, therefore, is liable for use tax. See *Master Craft Engineering, Inc v Dep't of Treasury*, 141 Mich App 56, 70-72; 366 NW2d 235 (1985) (plane repaired in Michigan). The fact that Grand Aire was the only active user of the plane does not serve to rebut the presumption.

Petitioner's reliance on *Sharper Image Corp v Dep't of Treasury*, 216 Mich App 698; 550 NW2d 596 (1996), is misplaced. *Sharper Image, id.* at 702-703, held that catalogs distributed in Michigan by third-class mail from another state were not subject to the use statute, because distribution did not constitute "using, storing, or consuming" as provided in MCL 205.93(1); MSA 7.555(3)(1). We see no material similarity between mailing catalogs to Michigan—where the distributor relinquishes all control over the catalogs—and flying an aircraft to Michigan—where the borrower is permitted to modify and operate the aircraft,

---

dance with the statute, the Tax Tribunal presumed that the aircraft petitioner brought into the state within ninety days of purchase was used in Michigan, and ruled against petitioner because it failed to rebut the presumption.

while the purchaser retains status as registered owner.

Petitioner's aircraft was thus subject to the Michigan use tax. We now consider petitioner's argument that it is entitled to share Grand Aire's exemption.

B. WHETHER PETITIONER CAN RAISE GRAND AIRE'S EXEMPTION

Petitioner contends that it is exempt from the use tax by virtue of Grand Aire's exemption because petitioner and Grand Aire should be considered one company for purposes of determining use tax liability. Petitioner maintains that its separate corporate identity is inconsequential for purposes of applying the exemption. We disagree.

Both parties rely on *Ann Arbor v Univ Cellar, Inc*, 401 Mich 279, 284-285, 291-292; 258 NW2d 1 (1977), in which the Michigan Supreme Court considered whether the University Cellar, a corporation created by the University of Michigan Board of Regents to operate a book store, shared the university's property tax exemption for government bodies and educational institutions.[6] *Id.* at 284-285. The majority's paramount consideration was the extent of the university's control over the University Cellar:

> The question whether the property of the Cellar is, in substance, University property depends essentially on whether the Regents or persons acting for and responsible to them so dominate the management and operation of the Cellar that its separate corporate identity should be ignored. [*Id.* at 285-286.]

Deferring to the State Tax Commission's factual determination, the Court noted that the university did not

---

[6] MCL 211.7, 211.9; MSA 7.7, 7.9.

control the University Cellar. Students selected a majority of the directors, and university regents exercised no influence over the store's operations. *Id.* at 286-287. The Court therefore concluded that the University Cellar should not be considered the university's "alter ego" for tax exemption purposes. *Id.* at 291-292. See also *Knapp-Stiles, Inc v Dep't of Revenue*, 370 Mich 629, 631-633, 636-637; 122 NW2d 642 (1963) (construction company found to be entitled to exemption for work being done for a corporation created at federal government's request and controlled by the construction company).

In addition to the control issue, the majority in *Ann Arbor, supra* at 291-292, also found it significant that the university incorporated the University Cellar in order to protect itself from liability:

> To disregard the corporate entity and treat the Cellar as the alter ego of the University for tax exemption purposes, and yet regard it as a separate entity for purposes of determining whether the University is subject to liability to unpaid suppliers or to customers who are injured on the premises or by defective products would be to run with the hare and hunt with the hounds.

Petitioner contends that under the control test established by *Ann Arbor* and *Knapp-Stiles*, it is entitled to the protection of Grand Aire's exemption. With regard to the "hare and hounds" portion of the *Ann Arbor* decision, petitioner vehemently protests that Cheema's motive in avoiding tax liability is irrelevant to the control issue. Petitioner avers that this Court should not "exalt form over substance" and declare it to be a separate entity from Grand Aire for purposes of applying the tax exemption.

Petitioner's argument misses the point of the control test. To benefit from the control test, petitioner would have to demonstrate that it was wholly owned and controlled by Grand Aire. Petitioner has not done so. Rather, the evidence here establishes that Cheema owned and controlled both Grand Aire and petitioner. Were we to accept petitioner's claim of shared tax exemption among "sister corporations" that are controlled by a common entity, a taxpayer who creates multiple corporations to conduct different functions of a business enterprise could avoid tax liability for all of them by structuring just one to benefit from a statutory exemption. Such a ruling would grossly undermine the policy and intent of the tax law.

Furthermore, we cannot, as petitioner desires, simply ignore the *Ann Arbor* Court's "hare and hounds" pronouncement. The *Ann Arbor* Court clearly intended that taxpayers not be able to assert or disregard arbitrarily their chosen corporate structures to suit the occasion. Having created separate corporate entities in the belief that his businesses would save money, Cheema cannot expect us to undo his efforts merely because, in hindsight, the creation of separate corporate entities has proved disadvantageous. Our consistency in this matter is not, as petitioner insinuates, "punishment" for tax planning.

Petitioner also relies on *Nat'l Music Camp v Green Lake Twp*, 76 Mich App 608; 257 NW2d 188 (1977). There, the National Music Camp, one of four corporate entities comprising the Interlochen Educational Complex, owned property that it used for educational purposes during its summer music program. Another of the four corporations, the Interlochen Arts Academy, used the property during the regular school

year. *Id.* at 612. The township assessing property tax claimed that the camp could not rely on its educational exemption, because it did not exclusively use the property as required by the pertinent statute. *Id.* at 613. This Court rejected the argument, however, and held that the camp and the academy, which were both components of the Interlochen Educational Complex, could be considered one institution for property tax purposes. *Id.* at 613-614.

*Nat'l Music Camp* is not relevant or analogous here. That case did not involve a nonexempt entity asserting an exempt entity's tax exemption. Rather, it involved two exempt entities, using the same property for a common educational purpose. In contrast, Grand Aire and petitioner were formed for distinct purposes, the former to operate a cargo business, the latter to act as registered owner of aircraft. The *Nat'l Music Camp* Court's language that a contrary result would "exalt[] form over substance" has no applicability in the present case.

### C. WHETHER PETITIONER WAS EXEMPT BECAUSE OF A "VIRTUAL LEASE"

Lastly, petitioner argues that it should be exempt from the use tax because it has a "virtual lease" agreement with Grand Aire. We disagree.

Subsection 4(g) (i) of the Use Tax Act, MCL 205.94(g)(i); MSA 7.555(4)(g)(i), provides an exemption for property sold or rented to an "industrial processor for use or consumption in industrial processing."[7] However, subsection 4(g)(i) specifically states that the term industrial processor

---

[7] Because "price" is defined as including rental receipts, MCL 205.92(f); MSA 7.555(2)(f), this exemption applies to property leased to an industrial

means a person who transforms, alters, or modifies tangible personal property by changing the form, composition, or character of the property for ultimate sale at retail or sale to another industrial processor to be further processed for ultimate sale at retail. *Sales to a person performing a service who does not act as an industrial processor while performing the service may not be excluded under this subdivision.*[8] [Emphasis added.]

It is undisputed that Grand Aire is engaged in the business of transporting air cargo and that the aircraft at issue is used in that business. There is no indication that the aircraft is used in any other way. Thus, even if petitioner had formally leased aircraft to Grand Aire—which it has not—it would not be entitled to an exemption under this statute because Grand Aire does not qualify as an industrial processor. See *Michigan Automotive Research Corp v Dep't of Treasury (After Remand)*, 222 Mich App 227; 564 NW2d 503 (1997), and *Beckman Production Services, Inc v Dep't of Treasury*, 202 Mich App 342; 508 NW2d 178 (1993) (petitioners did not satisfy "industrial processor" definition and were therefore not eligible for exemption).

We reject as unpersuasive petitioner's remaining arguments relating to its alleged status as a "constructive lessor." There is no authority for petitioner's suggestion that lessors, as a class, are automatically entitled to any exemption enjoyed by their lessees. We are unconvinced by petitioner's argument that Grand

---

processor. See *Kress v Dep't of Revenue*, 322 Mich 590; 34 NW2d 501 (1948) (disallowing exemption for rental income of "domestic" water processing units but allowing exemption for those units used in industrial processing).

[8] Computer systems are excluded. See MCL 205.94(g)(i) and (ii); MSA 7.555(4)(g)(i) and (ii).

Aire's exemption "flows through" to petitioner under rule 82, 1979 AC, R 205.132. This rule provides that lessors may opt to pay the use tax at the time of purchase of tangible personal property or to report and pay use tax on the rental receipts from the rental of that property, and describes the procedures for making the election. Petitioner's assertion that this rule allows it to benefit from Grand Aire's exemption—irrespective of its failure to comply with the rule's procedures or to enter into a formal lease agreement with Grand Aire—cannot be logically inferred from the language of this rule or from any of the authorities it cites.

Affirmed.

HOEKSTRA, J., concurred.

JANSEN, J. (*dissenting*). I dissent from the holding that petitioner, Czars, Inc., "used" the aircraft within the meaning of MCL 205.92(b); MSA 7.555(2)(b) such that it is liable for use tax. I find that the record is devoid of any evidence that Czars used the aircraft; therefore, I would reverse the decision of the Tax Tribunal.

As noted by the majority, Czars purchased the aircraft in Arizona and registered it with the Federal Aviation Administration in Czars' name. Czars, however, was not licensed to operate the aircraft. Tahir Cheema is the sole shareholder of Czars, a Delaware corporation that otherwise conducts no business, has no assets, and employs no one. Further, Czars transferred the aircraft to Grand Aire in Arizona. The aircraft was flown by a pilot employed by Grand Aire from Arizona to Michigan. While the aircraft was in Michigan, Grand Aire modified and operated it as a

cargo plane in Grand Aire's cargo business. Grand Aire held the license and maintained logs to comply with federal regulations.

The use tax applies to every person in this state "for the privilege of using, storing, or consuming tangible personal property in this state." MCL 205.93(1); MSA 7.555(3)(1). Further, "it is presumed that tangible personal property purchased is subject to the tax if brought into the state within 90 days of the purchase date and is considered as acquired for storage, use, or other consumption in this state." *Id.* I believe that Czars has rebutted this presumption because there is no record evidence that Czars used the aircraft within the meaning of MCL 205.92(b); MSA 7.555(2)(b), which defines "use" as

> the exercise of a right or power over tangible personal property incident to the ownership of that property including transfer of the property in a transaction where possession is given.

In its decision, the Tax Tribunal stated the following with regard to finding that Czars used the aircraft:

> There can be no dispute that, as owner, Czars must be deemed to have "used" the plane in question, in conformity with the definition contained in [MCL 205.92(b); MSA 7.555(2)(b)] of the use tax act, by means of "the exercise of a right or power over tangible personal property incident to the ownership of that property including transfer of the property in a transaction where possession is given."

The majority concludes that Czars "allowed" Grand Aire to fly the aircraft to Michigan, thereby exercising ownership rights in Arizona, and "permitted" Grand Aire to modify the aircraft, obtain federal approval to fly the aircraft, and use the aircraft in the cargo trans-

port business. However, I do not find this to be evidence that Czars "used" the aircraft and find these conclusions to be too passive to constitute "use" as that word is defined in the statute. See, e.g., *Sharper Image Corp v Dep't of Treasury*, 216 Mich App 698, 702-703; 550 NW2d 596 (1996) (the term "use" in the Use Tax Act does not include the distribution of catalogs from an out-of-state business).

I cannot conclude that there is sufficient evidence in the Tax Tribunal record that Czars exercised a right or power over the aircraft incident to its ownership of the aircraft. The Tax Tribunal seemed to conclude that the mere fact of Czars' ownership of the aircraft is sufficient to find that it used the aircraft as that word is defined in the statute. But, mere ownership is not necessarily sufficient to conclude that the entity (Czars) *exercised* a right or power over the property. In this case, the evidence indicates that Czars did nothing more than purchase the aircraft. The Tax Tribunal also made much of the fact that Cheema possessed total control of his companies, including Czars and Grand Aire. This fact still does not provide evidence that Czars exercised a right or power over the aircraft incident to its ownership of that aircraft.

I am unable to conclude that Czars "used" the aircraft within the meaning of MCL 205.92(b); MSA 7.555(2)(b) and find no evidence of such use in the Tax Tribunal record or the Tax Tribunal's decision. I would reverse the decision of the Tax Tribunal and find that Czars is not liable to pay a use tax on the aircraft in question. Because I would reverse on this

basis, I find it unnecessary to address the other issues raised by petitioner.