WPGP1, INC v DEPARTMENT OF TREASURY

Docket No. 212948. Submitted February 9, 2000, at Grand Rapids. Decided April 4, 2000, at 9:05 A.M.

WPGP1, Inc., brought an action in the Court of Claims against the Department of Treasury, seeking a refund of use tax paid under protest on aircraft owned by the plaintiff and leased to Southwest Airlines, Inc. On a record stipulated by the parties, the court, Michael G. Harrison, J., decided that use tax was not owed and issued a judgment ordering the defendant to refund the tax paid plus interest. The defendant appealed.

The Court of Appeals *held*:

The use tax is imposed for the privilege of using, storing, or consuming tangible personal property in Michigan. MCL 205.93(1); MSA 7.555(3)(1). "Use" means the exercise of a right or power over tangible personal property incident to the ownership of that property. MCL 205.92(b); MSA 7.555(2)(b). In light of leases giving exclusive authority to Southwest over the use, storage, and consumption of the airplanes for the duration of the leases, the plaintiff at no time used, stored, or consumed the aircraft in Michigan and therefore is not subject to the use tax. The plaintiff, a Delaware corporation that did not have an office in Michigan, did not use the aircraft by listing a Michigan mailing address in registration documents filed with the Federal Aviation Administration.

Affirmed.

TAXATION — USE TAX — LEASED AIRCRAFT.

The lessor of an aircraft is not subject to the use tax for the use, storage, or consumption of the aircraft in Michigan where the terms of the lease grant the lessee total control over the use, storage, and consumption of the aircraft for the duration of the lease (MCL 205.92[b], 205.93[1]; MSA 7.555[2][b], 7.555[3][1]).

*Honigman Miller Schwartz and Cohn* (by *Patrick R. Van Tiflin* and *Daniel L. Stanley*), for the plaintiff.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Glenn R. White,* Assistant Attorney General, for the defendant.

Before: Zahra, P.J., and White and Hoekstra, JJ.

Per Curiam. Defendant appeals as of right a judgment for plaintiff in which the Court of Claims ordered that defendant repay plaintiff $1,782,343.82 in use taxes, inclusive of interest, that plaintiff previously paid to defendant under protest. We hold that the use tax under the Use Tax Act (UTA), MCL 205.91 *et seq.*; MSA 7.555(1) *et seq.,* does not apply under the circumstances in this case, and therefore we affirm.

This matter came before the Court of Claims on a stipulated record. Plaintiff is a Delaware corporation with its principal place of business in Illinois and is a wholly owned subsidiary of another Delaware corporation, Whirlpool Financial Corporation (WFC), which maintains offices in Michigan, among other states. In March 1994, plaintiff purchased title to two airplanes at a foreclosure sale in Illinois. Before plaintiff's acquisition of the aircraft, WFC was a secured lender to two other companies who borrowed money from WFC to purchase the airplanes. The airplanes served as the security interest for the loans. When these companies defaulted on their loans, WFC foreclosed. At a public foreclosure auction sale in Illinois, plaintiff purchased the aircraft, both of which had already been leased to Southwest Airlines, Inc. (Southwest), and were used by Southwest as commercial passenger planes. Plaintiff's acquisition of the aircraft did not interrupt Southwest's continuous use of the airplanes in interstate commerce. After purchasing the

aircraft at the foreclosure sale, plaintiff registered the aircraft with the Federal Aviation Administration (FAA), as required by statute,[1] listing a Benton Harbor address as its permanent mailing address.

Defendant argues on appeal that the tax it imposed on plaintiff was valid because plaintiff "used" the airplanes in Michigan within the meaning of the UTA. Specifically, defendant argues that plaintiff "used" the airplanes in question by owning them, leasing them to Southwest, allowing Southwest to fly them into and out of a Detroit airport, and deciding to use a Michigan mailing address when registering the airplanes with the FAA.[2] We disagree. Interpretation of statutory language is a question of law, which we review de novo. *Michigan Automotive Research Corp v Dep't of Treasury (After Remand)*, 222 Mich App 227, 231; 564 NW2d 503 (1997). If the language of a statute is unambiguous, the statute must be enforced as written and no further judicial construction is required or permitted. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

The use tax under the UTA complements the sales tax and is designed to cover those transactions not covered by Michigan's General Sales Tax Act.[3] *Sharper Image Corp v Dep't of Treasury*, 216 Mich

---

[1] 49 USC 44101(a).

[2] We do not address the presumption under MCL 205.93(1); MSA 7.555(3)(1), which provides in relevant part "it is presumed that tangible personal property purchased is subject to the tax if brought into the state within 90 days of the purchase date and is considered as acquired for storage, use, or other consumption in this state," because the parties' stipulation of facts makes no mention of whether the airplanes were brought into Michigan within ninety days of their purchase. Regardless, it is clear from the stipulated facts of this case and the application of the facts to the law that any such presumption would have been overcome.

[3] MCL 205.51 *et seq.*; MSA 7.521 *et seq.*

App 698, 701; 550 NW2d 596 (1996). The UTA provides in relevant part:

> There is levied upon and there shall be collected from every person in this state a specific tax for the privilege of using, storing, or consuming tangible personal property in this state . . . . [MCL 205.93(1); MSA 7.555(3)(1).]

Under the UTA, the term "use" is defined as follows:

> "Use" means the exercise of a right or power over tangible personal property incident to the ownership of that property including transfer of the property in a transaction where possession is given. [MCL 205.92(b); MSA 7.555(2)(b).]

In the present case, defendant's imposition of the use tax on the airplanes owned by plaintiff is predicated mainly on the number of landings the planes made in Michigan during 1994 (forty-nine times and forty-four times, constituting less than 1.5 percent of each airplane's total landings for the year) and on the Michigan address listed on the planes' registration with the FAA. However, it is undisputed that plaintiff bought the airplanes subject to preexisting leases with Southwest. Under the leases, Southwest completely controlled the flight schedules and the routine maintenance of the airplanes. In addition, the leases held Southwest responsible for ensuring that the aircraft remained registered with the FAA in the name of the lessor. Under the UTA, the tax is imposed for "the privilege of using, storing, or consuming tangible personal property in this state . . . ." MCL 205.93(1); MSA 7.555(3)(1). If any of these privileges were utilized, it was done by Southwest, not plaintiff. "Use" means "*the exercise of a right or power* over tangible personal property incident to the ownership of that property . . . ," MCL 205.92(b); MSA 7.555(2)(b)

(emphasis supplied), which plaintiff did not do. Because of the leases, plaintiff at no time used, stored, or consumed the property in Michigan. Despite plaintiff's ownership interest in the airplanes, the leases gave exclusive authority over the use, storage, and consumption of the airplanes during the duration of the leases to Southwest, and thus plaintiff exercised no right or power over the airplanes. In other words, by virtue of the leases, plaintiff ceded control of the airplanes to Southwest, and therefore could not have "used" the airplanes for purposes of use tax liability under the UTA.

We believe our discussion in *Czars, Inc v Dep't of Treasury*, 233 Mich App 632; 593 NW2d 209 (1999), supports our conclusion in the present case. In *Czars*, where the petitioner allowed a sister corporation, Grand Aire, to use the petitioner's airplane in the absence of a formal lease agreement, the majority held:

> Petitioner concedes *that there is no lease or other documentary evidence showing that it totally* or permanently *relinquished control of the aircraft to Grand Aire in Arizona.* In addition to allowing Grand Aire to fly the plane to Michigan . . . petitioner also permitted Grand Aire in Michigan to modify the plane extensively, to obtain FAA approval to fly the plane, and to make use of the plane in Grand Aire's cargo transport business. Under these circumstances, petitioner failed to rebut the presumption that it exercised rights and powers of ownership . . . . in Michigan and, therefore, is liable for use tax. [*Id.* at 639 (emphasis supplied).]

In the instant case, unlike in *Czars*, there were indeed lease agreements that were originally executed in Texas between the entity flying the airplanes and the

previous owners of the airplanes. While the leases did not give Southwest *permanent* control of the airplanes, we conclude that the leases gave Southwest *total* control of them, because pursuant to the leases Southwest was responsible for the flight schedules and general maintenance of the planes. Plaintiff did not direct Southwest's routes or otherwise exercise dominion over Southwest's use of the planes. Therefore, unlike the situation in *Czars*, plaintiff in the instant case did not "use" the planes for purposes of the UTA, and the trial court properly invalidated the use tax imposed.[4]

Defendant implies that even if Southwest's actions cannot be attributed to plaintiff, plaintiff nonetheless "used" the airplanes under the UTA by registering them with the FAA using a Michigan address. We disagree. The record indicates that plaintiff did not actually have a Michigan office but merely listed a Michigan address on the airplanes' FAA registration forms. We conclude that this fact, standing alone, cannot support a finding that plaintiff "used" the airplanes in Michigan under the UTA.[5]

Because we find that the use tax does not apply under the circumstances in this case, we need not address defendant's other argument on appeal.

Affirmed.

---

[4] The *Czars* panel went on to state that no relinquishment of control occurs where "the borrower is permitted to modify and operate the aircraft, while the purchaser retains status as registered owner." *Czars, supra* at 639-640. In our opinion, a "borrower" is sufficiently distinct from a lessee such that this language does not indicate that the use tax was appropriate in the instant case.

[5] Cf. *Kellogg Co v Dep't of Treasury*, 204 Mich App 489, 493; 516 NW2d 108 (1994) (use tax properly imposed where the plaintiff registered two airplanes in Michigan *and* kept them in a Michigan hangar).